HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
(212) 513-3200
charles.weiss@hklaw.com

Federal Bar No. CW-2628

Attorneys for Plaintiff
Cervezas Cuauhtémoc
Moctezuma SA de CV

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CERVEZAS CUAUHTÉMOC MOCTEZUMA SA DE CV, | ) ) ) 13-5044 (WHW) |
| Plaintiff, | ) Civil Action No. ) ) |
| v. | ) ) ) |
| KCI, INC., and JEFFREY N. KLEIN, | ) ) ) |
| Defendants. | ) ) |

**COMPLAINT and JURY DEMAND**

Plaintiff CERVEZAS CUAUHTEMOC MOCTEZUMA, S.A. de C.V., by way of complaint against defendants KCI, INC., and JEFFREY N. KLEIN (individually each a "Defendant" and collectively "Defendants"), alleges as follows:

## PARTIES

1. Plaintiff is a Mexican corporation having its principal place of business at Avenida Alfonso Reyes 2202 Nte. Bellavista, Monterrey, Nuevo Leon, Mexico.

2. Upon information and belief, defendant KCI, INC., is a New Jersey corporation having its principal place of business at 19 Industrial Avenue, Suite B, Mahwah, New Jersey 07430.

3. Upon information and belief, defendant JEFFREY N. KLEIN, is an individual who resides at 10 Dansfield Ct., Upper Saddle River, New Jersey 07458, and is the president of KCI, INC.

## JURISDICTION AND VENUE

4. Plaintiff files this action against Defendants under the Federal Trademark Act, 15 U.S.C. Sections 1051-1127; and the Copyright Act of 1909, as amended, and the Copyright Act of 1976 (17 U.S.C. Sections 101 et seq.).

5. Jurisdiction is conferred on this Court by 28 U.S.C. Sections 1331 and 1338 and 15 U.S.C. 1121.

6. Venue is proper in this District under Title 28 U.S.C. Section 1391(a) and 1400(a). The Defendants reside within and/or do business within the jurisdiction of this Court.

## PLAINTIFF AND PLAINTIFF'S MARKS AND COPYRIGHTS

7.  Plaintiff is a major brewer in Mexico whose beers are known around the world. Plaintiff has been operating a brewery since at least as early as 1890. The beers sold by Plaintiff are renowned among members of the general public in the United States and around the world.

8.  One of Plaintiff's most popular beer products is DOS EQUIS beer which was first brewed in Mexico in or about 1900 and sold in the United States since as early as 1955. DOS EQUIS beer is sold and widely acclaimed not only in the United States but in many countries around the world. ("DOS EQUIS" hereafter referred to as "Plaintiff's Goods" or "DOS EQUIS").

9.  Plaintiff embarked on a vigorous, popular and costly national and international advertising and commercial campaign to promote DOS EQUIS beer. Plaintiff's advertising and commercial campaign for DOS EQUIS beer has featured "The Most Interesting Man in the World" ("MIM Campaign"). Numerous video and audio commercials have been created by Plaintiff for the MIM Campaign. These commercials feature the voice and face of Screen Actors Guild actor Jonathan Goldsmith ("Actor"). The audio and video commercials for the MIM Campaign feature the Actor who looks at the camera and ends the commercial with the words *"I don't always drink beer but when I do, I prefer DOS EQUIS. STAY THIRSTY MY FRIENDS."*

10. So as to protect the creativity and goodwill in its MIM Campaign, Plaintiff has formally protected trademarks and copyrights which are featured in and relate to the MIM Campaign. Plaintiff is the owner of all right, title, and interest in and to the well known and famous trademarks DOS EQUIS, STAY THIRSTY, MY FRIENDS and THE MOST INTERESTING MAN IN THE WORLD (the latter two collectively referred to as "Plaintiff's Marks").

11. Specifically, Plaintiff is the owner of United States Trademark Reg. No. 3,771,331 for the mark THE MOST INTERESTING MAN IN THE WORLD for beer in International Class 32, which issued on April 6, 2010. Plaintiff's Registration is valid and subsisting. A copy of Plaintiff's Registration, issued by the U.S. Patent and Trademark Office ("PTO") and the trademark assignment showing the status and title of Plaintiff's Registration, are attached hereto as Exhibit A. Exhibit A is conclusive evidence of Plaintiff's ownership of the mark THE MOST INTERESTING MAN IN THE WORLD, of the validity of the Plaintiff's Marks, and of Plaintiff's exclusive right to use the mark in commerce in connection with Plaintiff's goods.

12. Additionally, Plaintiff is the owner of United States Trademark Reg. No. 3,410,073 for the mark STAY THIRSTY MY FRIENDS for beer in International Class 32, which issued on April 8, 2008. Plaintiff's Registration is valid and subsisting. A copy of Plaintiff's Registration, issued by the PTO and the

trademark assignment showing the status and title of Plaintiff's Registration, are attached hereto as Exhibit B. Exhibit B is conclusive evidence of Plaintiff's ownership of the mark STAY THIRSTY, MY FRIENDS, of the validity of the Plaintiff's Marks, and of Plaintiff's exclusive right to use the mark in commerce in connection with Plaintiff's goods.

13. Plaintiff has been using Plaintiff's Marks in connection with Plaintiff's Goods continuously since at least 2007. During such time, Plaintiff has spent considerable time, effort and money in advertising and promoting its DOS EQUIS beer product, the Plaintiff's Marks and the MIM Campaign. As a result of Plaintiff's vigorous marketing, advertising, and promotion of its goods, the Plaintiff's Marks and the MIM Campaign, Plaintiff's Marks and the MIM Campaign have become well-known and famous as distinctive source indicators of the origin of DOS EQUIS beer, have acquired a highly favorable reputation among members of the purchasing public, and have become valuable symbols of Plaintiff's goodwill.

14. Plaintiff adopted Plaintiff's Marks at least as early as 2007. Since that time Plaintiff has continuously used and promoted Plaintiff's Marks and the MIM Campaign in connection with DOS EQUIS beer. Plaintiff has a reputation for high quality products and integrity in its business relationships with consumers and associates alike.

15. Plaintiff's Marks are strong, inherently distinctive, and arbitrary as applied to Plaintiff's Goods. Moreover, the distinctiveness of Plaintiff's Marks as a source indicator for Plaintiff's Goods has been increased by virtue of Plaintiff's long-term use and vigorous promotion of Plaintiff's Marks through the MIM Campaign over the last six years.

16. Plaintiff's Marks are famous trademarks.

17. Plaintiff has registered the copyright in at least two of its works of authorship for the MIM Campaign. These registrations have taken place in the United States. The Plaintiff has collateral copyright rights in Mexico as well.

18. On October 12, 2010, a formal Certificate of Copyright Registration was issued for "The Most Interesting Man in the World: Manscaping" under Reg. No. PA 1-742-096 (See Exhibit G). On October 12, 2010, a formal certificate of Copyright Registration was issued for "The Most Interesting Man in the World: Ice Fishing" under Reg. No. PA 1-707 (See Exhibit H). Collectively, Plaintiff's copyrighted works are "Plaintiff's Copyrights."

19. Plaintiff's Copyrights contain a substantial amount of material, wholly original with Plaintiff and is copyrightable subject matter under the laws of the United States of America.

20. Plaintiff has complied in all respects with the copyright laws of the United States of America and has secured statutory copyright and the exclusive

privileges offered by such copyright in Plaintiff's Copyrights. Since 2010, Plaintiff has been and still is the sole proprietor of all rights, title and interest in and to the copyright thereon.

## DEFENDANTS' UNAUTHORIZED DILUTING AND INFRINGING ACTIVITIES

21. Notwithstanding Plaintiff's prior rights in Plaintiff's Marks and the MIM Campaign, Defendants have adopted a commercial campaign which mimics the Plaintiff's MIM Campaign ("Defendants' Advertisings") as a means for commercially advancing the products and services of KCI, INC. This includes but may not be limited to the following:

    a. Defendant KCI, INC., has filed a trademark application in the PTO for the mark THE MOST INTERESTING SAN ARCHITECT IN THE WORLD (filed on June 11, 2013; serial number 85/957,235). This application identifies a date of first use of June 10, 2013 (see Exhibit C);

    b. Defendant KCI, INC., has filed a trademark application in the PTO for the mark I DON'T ALWAYS USE THIRD PARTY COMPANIES WHEN I BUY AND MAINTAIN SAN EQUIPMENT BUT WHEN I DO IT'S ALWAYS TEAM KCI... STAY CONVERGENT MY FRIEND (filed on June 11, 2013; serial number 85/957,245) (see

Exhibit D) (Collectively with Defendant KCI, INC.'s application referenced in a, "Defendants' Applications");

c. Defendant KCI, INC., has posted a YouTube video featuring Defendant JEFFREY N. KLEIN as "The Most Interesting SAN Architect in the World" ("Defendants' Video") (See Exhibit E, screenshots from webpages).

d. Defendants have posted Defendants' Video on Defendant KCI, INC.'s website (See Exhibit F).

e. Upon information and belief, Defendants have posted Defendants' Video on other sites and circulated it to consumers.

22. Plaintiff has used, advertised and promoted Plaintiff's Marks in interstate commerce from a date prior to the filing date of each of the Defendants' Applications and prior to any use of the marks in Defendants' Applications.

23. The registrations for Plaintiff's Marks were issued prior to the filing date of each of Defendants' Applications and prior to any use by Defendants of the marks set forth in Defendants' Applications.

24. Upon information and belief, at the time Defendant KCI, INC., filed Defendants' Applications and prior to any use of the marks set forth therein, Defendants knew or had reason to know of Plaintiff's prior rights in the MIM Campaign and Plaintiff's Marks.

## COUNT I
### (Federal Trademark Infringement)

25. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 24, above, as if set forth in their entirety herein.

26. Plaintiff's Marks and the corresponding registrations constitute constructive notice to Defendants of Plaintiff's claim of ownership of Plaintiff's Marks as provided in 15 U.S.C. Section 1072.

27. The marks set forth in Defendants' Applications are confusingly similar to Plaintiff's Marks and create a likelihood of confusion, mistake or deception as to the source of Defendants' goods or services. Defendants are thereby infringing Plaintiff's Marks.

28. Defendants' aforesaid infringing activities have caused and threaten to cause great and irreparable harm to Plaintiff by diverting revenue from Plaintiff.

29. Defendants' aforesaid infringing activities have caused and are likely to cause continued great and irreparable harm to Plaintiff through confusion in the market and in the minds of Plaintiff's customers and potential customers.

## COUNT II
### (Federal Copyright Infringement)

30. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 29, above, as if set forth in their entirety herein.

31. The aforesaid activities of the Defendants in copying the Plaintiff's MIM Campaign and using Plaintiff's Marks, producing Defendants' Video, copying language from the MIM Campaign, using Defendant Klein as a stand-in for the Actor in Defendants' Video and using music in Defendants' Video which is the same or substantially similar to the music in the MIM Campaign constitutes a willful copyright infringement. Upon information and belief, Defendants' activities are still taking place in commerce within the jurisdiction of this Court.

32. The Defendants' activities are done without the authority of Plaintiff and in violation of Plaintiff's registered copyrights. This reproduction has been a willful violation of Plaintiff registered copyright to Plaintiff irreparable damage.

33. The Defendants' infringing activities in copying, selling, marketing and/or distributing copies of Defendants' Video have been carried out without permission or license from Plaintiff to Plaintiff's irreparable damage and constitutes a willful infringement of Plaintiff's Copyrights.

34. The Defendants' aforesaid infringing activities have caused, and threaten to cause, great and irreparable harm and damage to Plaintiff by diverting revenue from Plaintiff which Plaintiff would otherwise obtain through the use of Plaintiff's Copyrights and the MIM Campaign.

35. Defendants' continued flagrant infringement of the Plaintiff's Copyrights constitutes a willful infringement which have caused and continue to cause great and irreparable harm to Plaintiff.

## COUNT III
**(Federal Unfair Competition)**

36. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 35, above, as if set forth in their entirety herein.

37. Defendants' aforesaid infringing activities constitute unfair competition, unfair trade practices and false designation of origins and have caused, and threaten to cause, great and irreparable harm to Plaintiff by diverting revenue from Plaintiff which Plaintiff would otherwise obtain through licensing, sale, leasing or production of the copyrighted works, all in violation of Title 15 U.S.C. Section 1125(a).

38. The Defendants' aforesaid infringing activities have caused and are likely to cause continued great and irreparable harm to Plaintiff through confusion, mistake or deception in the market and in the minds of Plaintiff's customers and potential customers.

## COUNT IV
**(Trademark Dilution - §43(c))**

39. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 38, above, as if set forth in their entirety herein.

40. Defendants' Marks are essentially identical to Plaintiff's Marks, as they contains no distinctive matter other than the designation "San Architect" instead of "Man" and "Convergent" instead of "Thirsty."

41. The literal portion of Defendants' Marks are essentially identical to Plaintiff's Marks in all respects, as it contains no distinctive matter other than the designations heretofore referenced.

42. Use of Defendants' Marks is likely to and will cause dilution by blurring and dilution by tarnishment of Plaintiff's Marks, impairing the distinctive quality of the Plaintiff's Marks.

43. Use or registration of Defendants' Marks will promote an association in the minds of the public between Defendants' Marks and Plaintiff's Marks, and between Defendants and Plaintiff arising from the similarity between Defendants' Marks and Plaintiff's Marks, thereby impairing the distinctiveness of Plaintiff's Marks by lessening the capacity of Plaintiff's Marks to identify and distinguish Plaintiff's Goods.

44. On information and belief, Defendants intended to create an association between Defendants' Marks and Plaintiff's Marks because of the fame and good reputation of Plaintiff's Marks.

45. Use and registration of the Defendants' Marks will deprive Plaintiff of the ability to protect its reputation, persona, and goodwill.

46. Use and registration of Defendants' Marks is likely to harm the reputation of Plaintiff's Marks because prospective customers who encounter defects in the quality of Defendants' Goods will attribute those defects to Plaintiff, thereby tarnishing and harming Plaintiff's goodwill, as represented by Plaintiff's Marks.

47. By reason of the foregoing, Plaintiff will be damaged by the registration of Defendants' Marks and registration should be refused pursuant to the provisions of Section 43(c) of the Trademark Act, 15 U.S.C. §1125(c).

## COUNT V
### (Likelihood of Confusion - §2(d))

48. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 47, above, as if set forth in their entirety herein.

49. The Defendants' Marks so closely resembles the Plaintiff's Marks in sound, appearance and meaning -- and in commercial impression -- that the use and registration thereof by Defendants is likely to cause confusion, mistake, and deception as to the source or origin of Defendants' Goods and will injure and damage Plaintiff and the goodwill and reputation symbolized by Plaintiff's Marks.

50. The fame and renown of Plaintiff's Marks is such that the public is likely to be confused, to be deceived, and to assume erroneously that Defendants' Marks are associated with or otherwise connected with Plaintiff, and to mistakenly believe that Defendants' Goods are those of Plaintiff or that Defendants are in some

way connected with, sponsored by, or affiliated with Plaintiff, all to Plaintiff's irreparable damage and injury.

51. Likelihood of confusion and deception is enhanced by the fact that Plaintiff's Goods and Plaintiff's commercial activities under Plaintiff's Marks are provided or intended to be provided to consumers who may be customers of Defendants' Goods.

52. Under the circumstances, registration and use of Defendants' Marks is likely to cause Plaintiff to lose control over the good and valuable reputation represented by and derived from Plaintiff's.

53. Registration of Defendants' Marks in light of the prior rights of Plaintiff in Plaintiff's Marks is therefore likely to cause confusion, mistake and/or deception among members of the relevant purchasing public resulting in damage and injury to Plaintiff in violation of the provisions of Section 2(d) of the Trademark Act, 15 U.S.C. §1052(d).

**COUNT VI**
**(False Suggestion of a Connection - §2(a))**

54. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 53, above, as if set forth in their entirety herein.

55. Defendants' Marks are the same as, or a close approximation of, Plaintiff's Marks, which are symbols of Plaintiff's identity and good will.

56. Defendants' Marks will be recognized by consumers as the symbol of Plaintiff's identity and good will.

57. Plaintiff is not connected with the Defendants, Defendants' Goods, or any activities performed by the Defendants under Defendants' Marks.

58. The fame and reputation of Plaintiff is such that, when Defendants' Marks are used with the Defendants' Goods, the public would presume, falsely, that there is a connection between Defendants and Plaintiff.

59. Defendants' Marks falsely suggest a connection with Plaintiff, and accordingly registration of Defendants' Marks should be refused under Section 2(a) of the Trademark Act, 15 U.S.C. §1052(a).

## COUNT VII
### (Violation of Character Rights)

60. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 59, above, as if set forth in their entirety herein.

61. Defendants' actions in creating Defendants' Video which has captured the total concept and feel of the Actor and Plaintiff's MIM Campaign and thereby constitutes a violation of Plaintiff's character rights in and to the Actor in its MIM Campaign.

## JURY DEMAND

Plaintiff demands trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff demands judgment against Defendants:

1. That the Defendants and their parents, affiliates, subsidiaries, officers, directors, employees, agents, successors and assigns, and all those persons in active concert or participation with them, be temporarily, preliminarily and permanently enjoined and restrained from infringing the copyrights of the Plaintiff's, the Plaintiff's Marks, in any manner, or any confusingly similar fashion and from offering, selling, marketing or otherwise using Defendants' Video or any images therefrom.

2. That the Defendants be required to pay to Plaintiff such damages as Plaintiff has sustained as a consequence of the Defendants' infringement of Plaintiff's trademarks, copyrights, character rights and other rights and to account for all gains profits, and advantages derived by the Defendants by its infringement of said rights or such damages as to the court shall appear proper within the provisions of the copyright statute.

3. That the Defendants be required to deliver up to be impounded all copies of the Defendants' Video or any iterations of it in its possession or under its control and to deliver up for destruction all infringing copies and all matter for making such infringing copies.

4. That the Defendants pay to Plaintiff enhanced damages due their willful infringement, all taxable costs of this action and reasonable attorney's fees to be allowed to Plaintiff by the Court pursuant to the applicable statutory provisions.

5. That Defendants be required to abandon the pending applications for Defendants' Marks and cease using Defendants' Marks.

6. That Plaintiff have such other and further relief as may be appropriate.

          HOLLAND & KNIGHT LLP
          Attorneys for Plaintiff

          Cervezas Cuauhtémoc
          Moctezuma SA de CV

By: /s Charles A. Weiss
     CHARLES A. WEISS
     (CW-2628)

Of counsel:

Scott W. Petersen
R. David Donoghue
Steven E. Jedlinski
HOLLAND & KNIGHT LLP
131 S. Dearborn St., 30th floor
Chicago, IL 60603
Tel: (312) 263-3600

DATED: August 22, 2013